IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| | : |
| DOROTHY H. MILTON | : |
| DEBTOR | : BANKRUPTCY NO. 04-13231 |
| | : |
| DOROTHY H. MILTON | : |
| PLAINTIFF | : |
| V. | : |
| WILSHIRE CREDIT CORPORATION, | : |
| U.S. BANK NATIONAL ASSOCIATION | : |
| DEFENDANTS | :ADV. NO. 04-0875 |
| | : |

# OPINION

By:  STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

The Debtor has filed suit against Wilshire Credit Corporation (Wilshire) and U.S.
Bank National Association (the Bank) to determine the validity and extent of their
secured interest in her home.  She contends that those defendants are liable to her for
violations of the Unfair Trade Practices and Consumer Protection law[1] (UDAP).  The
remedy which she seeks would affect the extent of that secured claim and disallow the
related proof of claim.  Both Defendants have filed answers to the Complaint and now
move for summary judgment.  The Debtor opposes the motion.  For the reasons set
forth below the Motion will be granted.[2]

---

[1]73 P.S. §201-1 et seq.  The acronym "UDAP" will be used referring to the generic
designation as a law regulating *u*nfair and *d*eceptive *a*cts and *p*ractices, i.e., "UDAP."

[2]Because the Complaint seeks to avoid a secured interest in the Debtor's property, it is a
core proceeding pursuant to 28 U.S.C. §157(b)(2)(K).  That subparagraph includes among core
(continued...)

*Standard for Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").[3]  Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-252, 106 S.Ct. at 2511-12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533

---

[2](...continued)
proceedings "determinations of the validity, extent, or priority of liens."

[3] Fed.R.Civ.P. 56 is applicable to the instant proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.")

(3rd Cir.1993); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d

Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould,*

*Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

    To successfully oppose entry of summary judgment, the nonmoving party may

not simply rest on its pleadings, but must designate specific factual averments through

the use of affidavits or other permissible evidentiary material that demonstrate a triable

factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511. Such evidence must be

sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.*

Evidence that merely raises some metaphysical doubt regarding the validity of a

material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric*

*Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56,

89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in

connection with an essential element of the case for which it bears the burden of proof

at trial, the moving party is entitled to entry of summary judgment in its favor as a matter

of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*Factual Background*

    In the Spring of 1997 Debtor received a telephone solicitation from the Shuman

Group Mortgage Co. (Shuman) regarding debt refinancing. Milton Deposition (Dep.) 18-

20.[4]  Shuman is a mortgage broker. *See* Motion, Ex. G.  The Debtor was interested in

---

[4]Neither party has appended a complete copy of Ms. Milton's deposition.  However, compiling the two excerpts yields roughly three quarters of the first 74 pages of her testimony.  This provides a coherent narrative of this transaction.

refinancing.  Dep. 19.  At that time, she was paying about $450 per month to the

existing mortgagee and the interest rate was 14% or 15%.  Dep. 14.  Mr. Shuman came

to the Debtor's home, obtained information for a loan application, and had the Debtor

sign the application.  Dep. 20-21.  The Debtor recalls being told two things at this

meeting: first, that the interest rate on this new loan would be around 8% because her

credit was good and, second, that the monthly payments would be less than $600 and

would go down after a year or two.  Dep. 22-23, 25, 28.  Whatever may have been said

to the Debtor regarding the terms of a new loan, Shuman gave her at this time a Good

Faith Estimate of Settlement Charges which listed an interest rate of 10.99%.  Motion,

Ex. G.  Shuman also gave her an undated Truth in Lending Act disclosure which

contains the same interest rate and a monthly payment of $599.49 which was fixed for

the term of the loan.  *Id*. Ex. H.  The Debtor signed both documents.  *Id*. Ex. G, H.

The loan was approved and settlement occurred on June 10, 1997.  Motion,

Response, ¶1 The lender was Cityscape Corp.  *Id*.  The amount of the loan was

$63,000 which consolidated the prior mortgage, credit card debt, and  property taxes

and provided her with an unspecified amount of cash.  Dep. 29.  The loan was secured

by a mortgage on her home.  Motion, Ex. B.  The Debtor did not read any of the

settlement documents when she signed them because she is legally blind.[5]  Dep. 53.

For that reason, Mr. Shuman paraphrased for her each document which she was

required to sign.  Dep. 27, 53.  When the Debtor asked Mr. Shuman why the interest

_____

[5]Her vision difficulties were due, she explained, to cataracts and retina problems.  Dep. 64.
She had a magnifier to help her read but because the settlement was stressful to her, her vision
became blurry.  Dep. 52.

rate was higher than expected, he gave her an explanation but she cannot recall what it was. Dep. 28. Mr. Shuman also told the Debtor what the monthly payment would be. Dep. 73. The Debtor signed the settlement documents notwithstanding the contrary terms. Dep. 29. She explained having done so because "[she] was against the wall [and she] wanted to get out of debt." Dep. 44. No one forced the Debtor to sign the documents, but Mr. Shuman "encouraged" her to do so. *Id.*

About one year after settlement – when the Debtor was expecting the monthly payment to decrease but had not – she would try to contact Shuman to ask why. Dep. 32. By that time, Shuman was out of business and the Debtor was never able to reach them. *Id.* She does not recall if she tried to contact Cityscape with these questions. Dep. 33. Regardless, she continued to make mortgage payments to Cityscape. Dep. 33-34.

The Debtor recalls that sometime in late 1998 and 1999, her loan went into default.[6] Dep. 34. By this time, the Bank had succeeded Cityscape[7] and would obtain a foreclosure judgment in August 2001. *See* Motion, Response ¶ 8. Debtor filed a bankruptcy case which was dismissed before the pending case. Wilshire, as the servicing agent for the Bank, filed a claim in the amount of the foreclosure judgment and arrears. *See* Response, Ex. C. The Debtor filed this adversary proceeding ostensibly to determine the validity and extent of the Bank's lien but with the intention of recouping the amount of the mortgage debt, voiding the mortgage, and disallowing the proof of

---

[6]The Bank asserts that her loan went into default in 2001. Motion, ¶ 5.

[7]Exactly when the Bank took the note is unclear from the record. This will be of importance in analyzing the bank's assertion of the holder in due course defense, *infra.*

5

claim.   The Defendants' motion makes a number of alternative arguments: that the

UDAP claim is barred by the applicable statute of limitations – affirmatively as well as by

recoupment; that it is barred under the doctrine of laches; that the complaint names the

wrong party; that the record does not support the substantive UDAP claim; that, even if

the record established UDAP liability, the Bank is a holder in due course; and that

Wilshire was nothing more than a servicing agent who filed the claim on U.S. Bank's

behalf, and therefore, cannot be liable to Plaintiff.   *See, generally,* Motion.

*Wilshire Will be Dismissed*
*From this Action*

The Court takes up first the request that judgment be entered in Wilshire's favor

as this matter is easily disposed of.  The Defendants maintain that Wilshire is a loan

servicer who never held the note.  Motion, ¶¶ 47,48.  The Debtor's Response maintains

that Wilshire is indeed a proper party to the action.  Response, ¶ 87.  But because the

Debtor ascribes alternative statuses to Wilshire, the Court must ascertain exactly what

Wilshire's role in this transaction was.[8]

In reviewing the record, the Court observes that the Proof of Claim identifies

Wilshire as the servicing agent for the Bank.  *See* Response, Ex. C.  The Court

concludes that the Debtor's arguments with regard to Wilshire *qua* servicing agent –

that it lacks standing to have filed the claim – are wholly incorrect as a legal matter.  The

authority to execute a proof of claim is governed by Bankruptcy Rule 3001 which states

that "[a] proof of claim shall be executed by the creditor *or the creditor's authorized*

---

[8]At one point, the Response alleges that Wilshire is a holder and is, therefore, liable to the Debtor; at another, it alleges that Wilshire lacks standing to file a proof of claim.   *See, generally*, Response ¶¶ 87-92.

agent ..." B.R. 3001(b) (emphasis added); *In re O'Dell*, 251 B.R. 602, 608 (Bankr.N.D.

Ala.2000) *rev'd on other grounds*, 305 F.3d 1297.  Thus, the record shows that Wilshire

was fully authorized to file that claim for the Bank and, therefore, the claim shall not be

disallowed on the grounds asserted by the Debtor.

But aside from the issue of standing, the Court just as easily concludes from this

record that Wilshire cannot be liable to the Debtor.  Wilshire was never a holder of the

note.  There is, then, no evidence of privity between it and the Debtor.  *See In re*

*Jackson*, 245 B.R. 23, 32 (Bankr.E.D.Pa.2000) (finding no liability on the servicer's

part); *cf. In re Harvey*, 2003 WL 21460063 *2 (Bankr.E.D.Pa.) (noting that under TILA,

servicer can be liable if it is or was the owner of the obligation).  Judgment will be

entered in Wilshire's behalf as to all claims raised in the Complaint.

*The Applicable Statute*
*of Limitations*

The Bank insists that Plaintiff's UDAP claim is barred by the applicable Statute of

Limitations.  Plaintiff does not dispute that the UDAP provides for a six year limitations

period.  She maintains, however, that she may raise her UDAP claim defensively, i.e.,

via recoupment as to the Bank's claim.  Is this permitted?

"Recoupment is a common law contract doctrine that allows 'countervailing

claims, which otherwise could not have been asserted together to be raised in a case

based upon any one of them.' " *Integra Bank/Pittsburgh v. Freeman,* 839 F.Supp. 326,

330 (E.D.Pa.1993) (*quoting Lee v. Schweiker*, 739 F.2d 870 (3d Cir.1984)).  A claim

may be asserted by way of recoupment "if the claim arises from the same contractual

transaction as the plaintiff's claim and essentially functions as a defense to that claim."

*Integra Bank/Pittsburgh v. Freeman*, *supra*, at 330. The Bank argues that the UDAP

claim does not arise from the same contractual transaction as the Bank's claim. The

Bank explains that while its Proof of claim was filed to protect and enforce its rights

under the loan documents, the Debtor's UDAP claim arises out of the relationship

between the Debtor and Shuman, the mortgage broker. *See* Motion, ¶¶ 27-28.

The Court does not find that argument to be persuasive. To the contrary, both

claims, as alleged, arise out of the same contractual transaction. The UDAP claim is

based on misrepresentations alleged to have been made by a person alleged to have

been a representative of the lender. The Bank's proof of claim is based on the Debtor's

failure to make the loan payments to the lender's successor in interest. The former is a

defense to the latter. Accordingly, the Debtor's UDAP claim may be raised by

recoupment.

*Would the UDAP Claim Be*
*Otherwise Barred by*
*the Doctrine of Laches?*

"The doctrine of laches consists of two essential elements: (1) inexcusable delay

in instituting suit; and (2) prejudice resulting to the defendant from such delay." *Central*

*Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098,

1108 (3d Cir.1996); *United States v. One Toshiba Television*, 213 F.3d 147, 156 (3d Cir.

2000). As to delay, the Bank points out that Debtor has waited more than 5 years to

raise this claim. Motion ¶ 33. On the question of prejudice, the Bank asserts that the

amount of unpaid principal and interest continue to accumulate. Motion ¶ 34.

The Court finds this argument equally unconvincing. The Debtor testified that in

2001 her first bankruptcy counsel told her that she did not have a case against the

8

mortgage company.  Dep. 65.  After hearing about predatory lending practices, she

consulted her present counsel.  *Id.*  This indicates not that she was sleeping on her

rights but, rather, that she did not know that she had a potential UDAP claim until many

years later.

The Bank's claims of prejudice resulting from the accruing debt do not persuade.

That assumes that the UDAP claims are not valid.  But if they turn out to have merit, the

Bank would not be entitled to some or all of the payments in the first place.    In this

context, prejudice is understood to mean that the Bank's defense was somehow

compromised with the passage of time.  *See General Insurance Company of America v.*

*Gross*, 1997 WL 230800 *9 (E.D.Pa.) (explaining that the prejudice required for laches

purposes is established where, for example, witnesses die or become unavailable,

records are lost or destroyed, and changes in position occur due to the anticipation that

a party will not pursue a particular claim.)  That is not what is alleged here.  In sum,

laches should not be applied.

*The Proper Party*
*to be Sued*

The Bank maintains that it is not a proper party to this action.  The holder of the

note, it explains, is "U.S. Bank National Association, fka First Bank National Association

as Trustee under the Pooling and Servicing Agreement dated June 9, 1997 for

Cityscape Home Equity Loan Trust 1997-C."  Motion, ¶ 39.  While the record reflects

that the Bank is correct on this point (*see* Motion, Ex.C.) there is no reason offered why

9

amendment should not be permitted under F.R.C.P. 15(c)(3)[9]: the same claim is
involved, the proper party had notice of the claim at inception, there is no showing of
prejudice as to the proper defendant, and the misnaming of the defendant was the
result of a mistake.  *See Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir.2003).
The Court will allow the caption to be amended to conform to the evidence.  *See*
F.R.C.P. 15(b).

*Does the Record*
*Support a UDAP Claim?*

Debtor maintains that the Bank is liable by imputation for the UDAP violations
alleged to have been made by Shuman as agent for Cityscape.  It is alleged that
Shuman and Cityscape "engage[d] in fraudulent conduct and created a likelihood of
confusion in Mrs. Milton regarding the loan's terms especially, in light of the fact that he
was aware that Mrs. Milton had to rely upon his representations about the loan's terms
because she is legally blind."  *See* Complaint ¶34.  Specifically, she maintains that the
interest rate applicable to her loan as well as the amount of the monthly payment were
misrepresented to her.  *Id.* ¶ 29-30.

In order to succeed in her claim under UDAP, the Debtor must meet three
criteria.  First, the debtor must show that the defendants' businesses constitute a "trade"
or "commerce" within the act, 73 P.S. § 201-3.  Second, she must show that the act
grants her a private cause of action for injuries sustained from the loan. 73 P.S. §
201-9.2. Third, the Debtor must demonstrate that the actions of which she complains
are either unfair or deceptive and fall within one of the 21 specific acts enumerated by §

---

[9]Made applicable by B.R. 7015.

201-2, which are declared unlawful by § 201-3. *See In re Smith*, 866 F.2d 576, 581 (3d Cir.1989).

As to the first element, the Court notes that the businesses of both Shuman and Cityscape are a trade or commerce within the act. *See In re Andrews*, 78 B.R. 78, 82 (Bankr.E.D.Pa.1987) (holding that the business of mortgage lenders is a sale or service within the scope of UDAP); *see also In re Barker*, 251 B.R. 250, 261 (Bankr.E.D.Pa.2000) (holding that mortgage broker's business is within the scope of UDAP).

Second, 73 P.S. § 201-9.2 provides that "any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of the UDAP may bring a private action to recover damages." As the person directly aggrieved by the alleged unlawful conduct, the Debtor has standing to bring an action under section 201-9.2.

The third prong, however, requires the Debtor to establish that the conduct complained of constitutes an unfair or deceptive act under UDAP. *See Smith, supra*, 866 F.2d at 583. The Complaint alleges "fraudulent conduct which create[d] a likelihood of confusion or of misunderstanding." Complaint, ¶¶ 33 citing 73 P.S. § 201-2(4)(xxi).[10] This is UDAP's final example of actionable conduct and is referred to as the catch-all provision of the statute. *See Plate Sales, Inc./Wilmington Steel v. Marathon Equipment*

---

[10]The Complaint cites the previous version of the catch-all provision. It was amended in 1996 to prohibit deceptive, as well as fraudulent, conduct. Act 146, P.L. 906 § 1, 12/4/96.

11

*Co.*, 2004 WL 966299 *1 (Pa.Com.Pl.).  In order to establish a claim under the catch-all

provision, a party must either demonstrate the elements of common law fraud, or that

the defendant's deceptive conduct caused harm to the plaintiff.  *Id.*  In this case, the

Plaintiff has characterized the conduct of Shuman *qua* agent of Cityscape to be

*fraudulent* as to her.  *See* Complaint ¶ 34. [11]

*The Claim of Fraud*

Under the common law of Pennsylvania, the specific elements of fraud are as

follows:

> (1) a representation;
>
> (2) which is material to the transaction at hand;
>
> (3) made falsely, with knowledge of its falsity or recklessness
> as to whether it is true or false;
>
> (4) with the intent of misleading another into relying on it;
>
> (5) justifiable reliance on the misrepresentation; and
>
> (6) the resulting injury was proximately caused by the
> reliance.

*Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994).  The representation from

which the fraud claim proceeds is that Mr. Shuman told the Debtor at their first meeting

that the interest rate would be 8% and that the monthly payment would begin at less

than $600 and then go down.  Dep. 22, 25.  Nothing in the record contradicts this

specific claim; therefore, the Court will accept it as true for purposes of this motion.  The

---

[11]At oral argument, Plaintiff would couch her claim in terms of having been mislead. Transcript, 12; Response ¶ 106.  This implies that Shuman and Cityscape are guilty of deception. However, because, Plaintiff's Complaint never pleads deceptive conduct nor has she sought to amend it, she will not be able to bootstrap an allegation of deception to her extant fraud claim.

Court will also accept as true the claim that such representation was material given her

stated reliance on those terms.  And the Court will likewise consider proven that such

representation was false or recklessly untrue and made with the intent to mislead her

considering that all of the subsequent documents contain the objectionable loan terms.

*The Reliance Prong*

But what the Court cannot consider demonstrated – however the record is

viewed – is that the Debtor ever relied upon what Shuman said to her at the initial

meeting, or even assuming reliance, that it was justified in light of what transpired at the

closing: she was informed of the objectionable interest rate and monthly payment,

asked for and received an explanation of why those terms were not what she had

expected, and then went ahead and signed the documents notwithstanding.  The

Pennsylvania Superior Court has explained that the fraud plaintiff has some minimal

duty to test the truth of the alleged misrepresentation with readily available evidence:

> It is the fundamental principal of the law of fraud, regardless
> of the form of the relief sought, that in order to secure
> redress, the representee must have relied upon the
> statement or representation as an inducement to his action
> or injurious change of position. The recipient of a fraudulent
> transaction can recover against its maker ... if, but only if, (a)
> he relies on the misrepresentation in acting or refraining from
> action, and (b) his reliance is justifiable. Restatement
> (Second) of Torts § 537 (1977). *See: Scaife Co. v.
> Rickwell-Standard Corp.*, 446 Pa. 280, 286-288, 285 A.2d
> 451, 455-456 (1971); *Emery v. Third National Bank of
> Pittsburgh*, 308 Pa. 504, 511-512, 162 A. 281, 283 (1932);
> *Delahanty v. First Pennsylvania Bank, supra; National
> Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 376, 381
> A.2d 963, 966 (1977); 37 Am.Jur.2d, supra at §§ 223, 236.
> ...
> The rules for determining whether a person's reliance upon a
> fraudulent misrepresentation are [sic] justifiable have been
> set forth in sections 540 and 541 of the Restatement

13

(Second) of Torts. Those rules provide as follows:

§ 540 Duty to Investigate

The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.

§ 541 Representation Known to Be or Obviously False

The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.

Thus, "[a]lthough the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Restatement (Second) of Torts § 541 comment a.

*Silverman v. Bell Savings & Loan Association*, 367 Pa.Super. 464, 472-474, 533 A.2d

110, 114-115 (Pa.Super.1987).

While accepting as true for purposes of the motion that Mr. Shuman made an

intentionally false and material representation to Debtor about the rate of interest and

monthly payment at their first meeting, *all* of the evidence subsequent to that should

have indicated to her that those terms had been misrepresented.  The record reveals

that she received two disclosures – one dated prior to closing and the other undated –

which definitively contradict the interest rate and monthly payment.  *See* Motion, Ex.

G,H.  And again, at closing, she was informed that her loan had an interest rate of 8%

and that monthly payment would never be under $599.  Dep. 28-29, 73.  When inquiring

14

about this discrepancy, she was given an explanation which she cannot recall and then she signed the note.  Two inferences can be made from this: first, that the explanation was satisfactory and, therefore, she no longer relied on what Shuman may have told her at their first meeting; or, second, that if she did rely on what was said to her at the outset, she was unjustified in continuing to do so.  And it matters not that she was visually impaired at the settlement: she testified that Shuman explained to her the key terms.  She was simply not justified in signing the note as presented to her.  Her testimony indicates that she was induced to sign the documents not by fraud, but out of financial desperation.  Dep. 44.  On this record, she simply has no fraud claim.

*The Liability of Cityscape*

But even assuming that a UDAP violation is established, such liability is not found as to Cityscape, the entity from whom the Bank took the note.  Plaintiff may allege that Shuman was Cityscape's agent but there is no evidence of that.  None of the disclosures which Shuman gave the Debtor – the Good Faith Estimate of Settlement Charges and the TILA statement – mention Cityscape at all.  *See* Motion, Ex. G and H. Moreover, it was Debtor's testimony that Shuman never told her that he was associated with Cityscape:

> Q.    Did Mr. Shoeman [sic] ever tell you he was
>        associated with City Scape?
>
> A.    No.    No.    Not when he first came, no.
>
> Q.    What do you mean?
>
> A.    When I first met him, no, he didn't introduce himself
>        as being with City Scape.   No.
>
> Q.    Did he ever tell you he was with City Scape?

15

A.    No.

Dep. 43.  And while Cityscape is mentioned for the first time as having appeared at the

settlement (*see* Dep. 22), there is no evidence that Cityscape said or did anything other

than to make the loan.[12]    The record is, therefore, devoid of any such nexus between

the alleged misrepresentations and Cityscape.  So if fraud was perpetrated on the

Debtor here, there is no evidence that Cityscape was a party to it.  The corollary to that

finding is that there no UDAP liability which may be imputed to the Bank.

*The Bank's Affirmative Defense*

But even assuming UDAP liability on the part of either Shuman or Cityscape, the

Bank posits, it has a defense to that claim.  It asserts that it is a holder in due course

(HDC).  Motion, ¶¶ 40-46.  Debtor disputes that U.S. Bank enjoys such protection for

two reasons: first, it argues that the exculpatory clause in the note disqualifies it from

being a negotiable instrument, which is the predicate for asserting HDC status.

Response, ¶ 38; *see FDIC v. Parkway Executive Office Center*, 1997 WL 535164 *16

(E.D.Pa.); and second, even if the note is a negotiable instrument, the Bank knew of the

Debtor's claim against Cityscape when it took the note.  *Id.* ¶¶ 46-53.  That lack of

innocence would equally disqualify the Bank from asserting that defense.

*Is the Loan a*
*Negotiable Instrument?*

Under Pennsylvania law, an "instrument" means a negotiable instrument which,

in turn, is defined as:

---

[12]That Cityscape made the loan is safely inferred; otherwise, the Debtor would never have
begun sending mortgage payments to it.

> [] an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
>
> (i) an undertaking or power to give, maintain or protect collateral to secure payment;
>
> (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or
>
> (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

13 P.S. § 3104(a), (b).  Pursuant to the Corporate Assignment, the note is now payable to the Bank.  *See* Motion, Ex. C.  By its own terms, the note is payable in defined installments.  *Id.* Ex. A. Nothing else is asked of the Debtor except that the debt be secured by her home.  *Id.* ¶ 8.  All of this indicates that this note is a negotiable instrument as defined by Pennsylvania law.

But Plaintiff points out that the note contains an exculpatory rider which makes the loan non-recourse.  In other words, should Debtor default, the Bank can look only to her home to satisfy its claim; no deficiency judgment may be pursued.  Response, ¶¶ 38-42.  How this takes the transaction outside the scope of the definition of a negotiable instrument is never explained.  This argument, then, is nothing more than a red herring. The Court therefore finds that the loan is a negotiable instrument and turns to the

17

question of the Bank's claim of HDC status.

*Is the Bank a Holder
in Due Course?*

Pennsylvania law defines a holder in due course as the holder of an instrument if:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument:
>
> (i) for value;
>
> (ii) in good faith;
>
> (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;
>
> (iv) without notice that the instrument contains an unauthorized signature or has been altered;
>
> (v) without notice of any claim to the instrument described in section 3306 (relating to claims to an instrument); and
>
> (vi) without notice that any party has a defense or claim in recoupment described in section 3305(a) (relating to defenses and claims in recoupment).

13 P.S. § 3302(a).  A holder of a negotiable instrument is a holder in due course if it takes an instrument for value, in good faith and without notice of defenses.  *In re Crisomia*, 2002 WL 31202722 *12 (Bankr.E.D.Pa.); *Progressive Casualty Insurance Co. v. PNC Bank, N.A.*, 1999 WL 557292 **2, 3 (W.D.Pa.) (citing 13 Pa.C.S.A. § 3302(a)(2)).  Moreover, every holder of an instrument is deemed prima facie to be a holder in due course subject to a rebuttable presumption to the contrary, *id.* (citing

18

Pennsylvania law), *accord Putnam v. Ensign Oil Co.*, 272 Pa. 301, 305, 116 A. 285, 286

(1922), *Morgan Guaranty Trust Co. of N.Y. v. Staats*, 428 Pa.Super. 479, 488, 631 A.2d

631, 636 (1993).  What does the record show on this score?

     The Corporate Assignment recites that the transfer of the loan to the Bank was

for "value received."   *See* Motion, Ex. C.  As to "good faith" the statute defines it as

"[h]onesty in fact in the conduct or transaction concerned."  13 P.S. § 1201.  The record

does not indicate that the Bank did not take the note for anything but a legitimate

commercial purpose.    There is also no indication that the instrument is either overdue,

has been dishonored, or that it is part of a series of instruments in which there has been

a default .  Similarly, there is no forgery or alteration apparent.  And there has been no

adverse claim as to the instrument.  That leaves the question of whether the Bank took

the loan "without notice that any party has a defense or claim in recoupment described

in section 3305(a)."  That subsection provides:

>     (a) **General rule**.--Except as stated in subsection (b), the
> right to enforce the obligation of a party to pay an instrument
> is subject to the following:
>
>     (1) a defense of the obligor based on: (i) infancy of the
> obligor to the extent it is a defense to a simple contract;
> (ii) duress, lack of legal capacity or illegality of the
> transaction which, under other law, nullifies the obligation of
> the obligor; (iii) fraud that induced the obligor to sign the
> instrument with neither knowledge nor reasonable
> opportunity to learn of its character or its essential terms; or
> (iv) discharge of the obligor in insolvency proceedings;
>
>     (2) a defense of the obligor stated in another section of this
> division or a defense of the obligor that would be available if
> the person entitled to enforce the instrument were enforcing
> a right to payment under a simple contract; and
>
>     (3) a claim in recoupment of the obligor against the original

19

> payee of the instrument if the claim arose from the
> transaction that gave rise to the instrument, but the claim of
> the obligor may be asserted against a transferee of the
> instrument only to reduce the amount owing on the
> instrument at the time the action is brought.

13 P.S. § 3305(a).  Turning first to subsection (1), it appears that there is no claim of

infancy, that the obligation is otherwise void, or that it was discharged in bankruptcy.

The Plaintiff argues that she was defrauded here; that implicates subparagraph (1)(iii).

The Bank's response to any assertion of fraud is that she has alleged fraud in the

inducement, as opposed to fraud in fact.  Only the latter is a defense to a holder in due

course while the former is not.  Motion, ¶¶ 42-43. *See State Street Bank & Trust Co. v.*

*Hawser*, 908 F.Supp. 249, 253 n.4. (M.D.Pa.1995) (citing *Exchange Intern. Leasing*

*Corp. v. Consolidated Business Forms Co., Inc.*, 462 F.Supp. 626, 628-629

(W.D.Pa.1978) which offers as an example of fraud in factum where an obligor signs the

instrument with neither knowledge nor reasonable opportunity to learn of its essential

terms); *accord Germantown Mfr. Co. v. Rawlinson*, 491 A.2d 138, 142, 341 Pa.Super.

42, 45 (Pa.Super.1985).  Where, as here, the Debtor knew that she was signing a

promissory note and mortgage and was informed of the terms of that obligation, fraud in

fact is not established.

Neither does subsection (2) disqualify the Bank from asserting this defense.  As

the Comment explains:

> Subsection (a)(2) states other defenses that, pursuant to
> subsection (b), are cut off by a holder in due course. These
> defenses comprise those specifically stated in Article 3 and
> those based on common law contract principles. Article 3
> defenses are nonissuance of the instrument, conditional
> issuance, and issuance for a special purpose (Section
> 3-105(b)); failure to countersign a traveler's check (Section

> 3-106(c)); modification of the obligation by a separate
> agreement (Section 3-117); payment that violates a
> restrictive indorsement (Section 3-206(f)); instruments
> issued without consideration or for which promised
> performance has not been given (Section 3- 303(b)), and
> breach of warranty when a draft is accepted (Section
> 3-417(b)). *The most prevalent common law defenses are
> fraud, misrepresentation* or mistake *in the issuance of the
> instrument.* In most cases the holder in due course will be an
> immediate or remote transferee of the payee of the
> instrument.

13 P.S. § 3305 Uniform Commercial Code – Comment 1990 (emphasis added).  The

fraud alleged here is not found elsewhere in the statute.  Nor is it an instance of fraud in

fact as discussed, *supra.*

Whether the Bank was without knowledge of a recoupment claim when it took the

loan – in other words, whether subsection (a)(3) disqualifies the Bank from HDC status

– is, however, a different matter.  The Motion states that Cityscape subsequently

assigned the note and mortgage to the Bank but it never states exactly when that

occurred.  *See* Motion, ¶ 3.  And more importantly, the Corporate Assignment of

Mortgage/Deed of Trust states that this assignment was not executed until April 19,

*2005. See* Motion, Ex. C.  That is more than 7 years after the settlement and 6 months

after this Complaint was filed.  Plaintiff concludes from this that the Bank was on notice

of the UDAP claims when it became the holder of the note.  *See* Response, ¶¶ 46-53.

The Bank dismisses this discrepancy explaining that the assignment is merely a

formality.  Transcript 13.  It further maintains that the Debtor admitted in the foreclosure

action that the Bank holds the note (*id.*); however, the foreclosure complaint never

alleges when it became the holder.  *See* Motion Ex. D.  Equally unpersuasive is the

Bank's argument that the purpose of the assignment is to inform third parties of the

21

Bank's interest in the note. *Id.* That sheds no light on when the Bank took the note and hence of its knowledge of Plaintiff's UDAP claim. The only evidence in the record which reflects when the note was negotiated to the Bank is the Corporate Assignment. For whatever reason, that document was not executed until this year. *See* Motion, Ex.C. While an affidavit on the Bank's part may have made matters clear, and enable the Court to reach a reasonable inference in the Bank's favor as to this issue, no such evidence is present. Consequently, the Court cannot conclude on this record that the Bank is a holder in due course.

*Summary*

Summary Judgment will be entered in favor of Wilshire as to all requests for relief in the Complaint and as to the objection to the Proof of Claim. As the Bank has failed to satisfactorily demonstrate that it is a holder in due course, the Court must judge the substantive UDAP claim reasonably inferring everything in the record in Debtor's favor. The Debtor maintains that she was defrauded, but that claim is simply not supported the by record however it is viewed. Without any evidence to support fraud on the part of Shuman or Cityscape, no liability may be imputed, then, to the Bank. Summary judgment will thus be entered in favor of the Bank on the substantive UDAP claims. That leaves as unadjudicated only Debtor's request that the foreclosure costs be disallowed from the Proof of Claim as being unreasonable. *See* Complaint, Prayer, d. A hearing to resolve this contention will be scheduled.

22

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   <u>July 26, 2005</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                          : CHAPTER 13
                                                :
DOROTHY H. MILTON                               :
                                                :
                          DEBTOR                : BANKRUPTCY NO. 04-13231
_____             :
DOROTHY H. MILTON                               :
                          PLAINTIFF             :
                                                :
              V.                                :
WILSHIRE CREDIT CORPORATION,                    :
U.S. BANK NATIONAL ASSOCIATION                  :
                          DEFENDANTS            : ADV. NO. 04-0875
_____             :

# ORDER

**AND NOW** upon consideration of the Motion of Defendants, Wilshire Credit

Corporation and U.S. Bank National Association, For Summary Judgment, the

Response of the Debtor, after a hearing held on June 23, 2005, and for the reasons set

forth in the attached Opinion, it is

**ORDERED** that the Motion is Granted and that judgment is entered in favor of

both Defendants and against the Plaintiff as to the Plaintiff's UDAP claim; and it is

**FURTHER ORDERED** that the objection to the Bank's Proof of Claim is denied to

the extent disallowance was based on alleged UDAP violations; nothing in this ruling

adjudicates the Plaintiff's contention that the "foreclosure costs" included in the Proof of

Claim are unreasonable.  An evidentiary hearing will be held on September 7, 2005, at

10:00 a.m. in Courtroom #4, United States Bankruptcy Court, 900 Market Street,

Philadelphia, PA 19106 to resolve the issue of the inclusion of foreclosure costs in the

Bank's Proof of Claim

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   <u>July 26, 2005</u>

**<u>MAILING LIST:</u>**

George Conway, Esquire
Office Of The U.S. Trustee
950 W Curtis Center
7th & Sansom Streets
Philadelphia PA  19106

Stephen M. Hladik, Esquire
KERNS PEARLSTINE ONORATO & FATH LLP
425 W. Main Street
P.O. Box 29
Lansdale, PA 19446-0029

Dawn T. Williams, Esquire
Philadelphia Legal Assistance
1424 Chestnut Street
2d Floor
Philadelphia, PA 19102

Frederick Riegle, Esquire
Standing Chapter 13 Trustee
P.O. Box 4010
Reading, PA 19606

Nancy Mulvehill, Courtroom Deputy

2